**Chief of Police Sam NUCHIA (Succeeded by C.O. Bradford) and the City of Houston, Appellant,**

v.

**James E. TIPPY, Appellee.**

No. 12–97–00268–CV.

Court of Appeals of Texas, Tyler.

July 30, 1998.

Marcus Dobbs, Houston, for appellant.

W. Stacey Mooring, Houston, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Appellants, the City of Houston and Chief of Police Sam Nuchia ("the City"), appeal an order granting summary judgment which upheld a hearing examiner's award reinstating Appellee, James E. Tippy ("Tippy"), a discharged policeman. The City has assigned the following issues: 1) whether the examiner improperly applied existing law; or 2) exceeded his jurisdiction; and 3) what is the standard of review from an award of an examiner under Chapter 143 of the Texas Local Government Code. We conclude that the examiner properly applied the law, did not exceed his jurisdiction, and the standard of review is an abuse of authority. We will affirm.

From a review of the record, we find that on September 13, 1994, Tippy was suspended indefinitely by Nuchia. The specific reasons for suspension included misuse of communication equipment, tardiness, dereliction of duty, and referring to his superior officers as a "bunch of zips" and his immediate superior, Lieutenant J.A. Buttitta ("Buttitta"), as "that guinea wop." Before Tippy's suspension, Buttitta sent Nuchia a synopsis of an investigation purportedly conducted by Sergeant LaBonte ("LaBonte"), an Internal Affairs Division officer, in which the specifics of the allegations were set out. Based upon that investigation, Buttitta recommended Tippy's suspension.

Pursuant to TEX. LOC. GOV'T CODE ANN. § 143.1016 (Vernon Supp .1990), Tippy elected to have an independent hearing examiner, rather than the Civil Service Commission,

hear and determine his appeal. At the hearing, Tippy first raised the issue that Buttitta was, in fact, the complainant or a person who had a personal involvement who conducted the investigation, and that his actions were in contravention of Chapter 143.123 of the Texas Local Government Code, which reads in part as follows:

> A person may not be assigned to conduct an investigation if the person is the complainant, the ultimate decision maker regarding disciplinary action, or a person who has any personal involvement regarding the alleged misconduct. A fire fighter or police officer who is the subject of an investigation has the right to inquire and, on inquiry, to be informed of the identities of each investigator participating in an interrogation of the fire fighter or police officer.

TEX. LOC. GOV'T CODE ANN. § 143.123(e) (Vernon Supp.1990). He further asserted that sanctions should be imposed, pursuant to Subsection (k):

> If the department head or any investigator violates any of the provisions of this section while conducting an investigation, the municipality shall reverse any punitive action taken pursuant to the investigation including a reprimand, and any information obtained during the investigation shall be specifically excluded from introduction into evidence in any proceeding against the fire fighter or police officer.

TEX. LOC. GOV'T CODE ANN. § 143.123(k) (Vernon Supp.1990).

On February 6, 1996, the hearing examiner issued his award which included the following findings and conclusions:

> The proceedings were tape recorded to assist in reviewing the record and preparing this Award. Sergeant LaBonte, the Internal Affairs investigator, concerning Grievant's alleged misconduct, testified that Lieutenant Buttitta was the original complainant against Grievant. Sergeant LaBonte's I.A.D. complaint report (CX 6) to Chief Sam Nuchia states in the Introductory paragraph "Lieutenant J.A. Buttitta instructed me to conduct an analysis of Officer Tippy's M.D.T. [Mobile Digital Terminal] transmissions for the month of

> March, 1994, in order to determine if these violations were an ongoing problem or if they were isolated incidents." This statement appears to be consistent with Sergeant LaBonte's testimony that Lieutenant Buttitta was the original complainant.

> It is the opinion of the Arbitrator that the person most likely to know who the complainant was would be the person assigned to investigate the complaint. In this case that was Sergeant LaBonte and he testified that Lieutenant Buttitta was the original complainant.

> In the instant case the allegations were investigated by Sergeant LaBonte under the supervision of Lieutenant Buttitta and the latter prepared the Investigation Synopsis which included recommendations that the allegations be sustained and that Grievant be indefinitely suspended.

> The record establishes that therefore the Complainant, Lieutenant Buttitta, participated in the investigation.

Following is a recitation of the award at issue in this case:

> The record discloses the City failed to comply with Local Government Code Chapter 143.123 Subsection (E) and such failure, in accordance with Subsection (K) thereof, requires the exclusion of any information obtained during the investigation. Therefore the City's evidence against Officer Tippy has been rejected and in the absence of such evidence the charges against Officer Tippy must be held not to be true.

The City appealed the award to the district court pursuant to TEX. LOC. GOV'T CODE ANN. § 143.1016 (Vernon Supp.1990). Various motions for summary judgment were filed by both sides. In addition, a declaratory judgment proceeding was filed in which the City sought a declaration of the standard of review. The district court granted Tippy's third motion for summary judgment. In its appellate brief filed in this court, the City argues that the hearing examiner's award and Tippy's affidavit were not proper summary judgment evidence. It asserts, therefore, that without the award and Tippy's affidavit, Nuchia's status as the complainant

went undisputed. The City also contends that the identity of the complainant was not at issue until the hearing examiner had already acquired the case. Consequently, the examiner exceeded his jurisdiction or abused his authority when he heard evidence on that issue and found that Buttitta was a complainant as well as involved in the investigation.

The City's summary judgment evidence included: (1) an August 4, 1994 investigation synopsis from Buttitta to Nuchia as Chief of Police setting forth LaBonte's allegations of violations of beat integrity, misuse of department mobile digital computers, negligence on duty, low productivity, etc. and Tippy's statement "... that Ginny WOP should be pleased."; [1] (2) an unsigned record of complaint which reflected that it was made by Nuchia on May 10, 1994; (3) an affidavit by LaBonte stating:

> I am over the age of 21 years and fully capable of making this affidavit. I was the investigator assigned to the Tippy investigation. My investigation began with receiving the record of complaint from the Internal Affairs Division. Chief Nuchia was listed as the complainant. It is not unusual for the Chief of Police to adopt a complaint and become the official complainant. To my knowledge, Lieutenant Buttitta was not the complainant and did not originate the complaint. I discussed this investigation with Lieutenant Buttitta because he was my IAD supervisor. Any discussing came after I was assigned the case and concerned the investigative procedures involved in the case.

(4) an affidavit of Buttitta stating:

> I am over the age of 18 and I am fully competent to make this affidavit. All of the facts are within my personal knowledge. I am a Lieutenant of Police in the Houston Police Department. During the time of October, 1993 to March, 1995 I was working in the Traffic and Accident Division. During this time, a Sergeant came to me with a complaint concerning the performance of Officer Ruggles. Officer Ruggles had a problem of not being responsive to calls for service. This com-

plaint was forwarded to Internal Affairs Division (IAD). Officer James Tippy was determined to be the officer that was checking by with Officer Ruggles. I was not the complainant in this case. The record of complaint came back from IAD adopted by the Chief of Police, Sam Nuchia. This would be normal under these circumstances. I would have discussed the investigative procedures with Sergeant LaBonte because I was the IAD Lieutenant of the Traffic and Accident Division.

(5) a letter of dismissal from Nuchia elaborating on the causes of the dismissal, which included the following:

> A review of the transcripts of Mobile Digital Terminal (M.D.T.) Transmissions sent by Officer Tippy during the relevant period of March, 1994, illustrates his apparent contempt for his duties and his superior officers. For example, on March 17, 1994, the M.D.T. transcripts revealed that Officer Tippy and Officer M. Ruggles engaged in a conversation related to the length of time each officer can spend arriving on call for service. When Officer Ruggles stated that he previously spent two hours arriving on a call, Officer Tippy responded with an ethnic slur regarding a superior officer by stating, "that Ginny Wop should be pleased. On March 23, Officer Tippy referred to his superiors over the M.D.T. as a bunch of zips." On March 24, Officer Tippy complained of a directive issued by "my stupid Lt."

The City argues that the hearing examiner's award and Tippy's affidavit were not proper summary judgment evidence to rebut the City's argument that Nuchia was the complainant against Tippy. The City takes the view that the examiner did not have jurisdiction to make the determination; consequently, the award, which was void for lack of jurisdiction, did not constitute proper summary judgment evidence which would support Tippy's motion or refute the City's motion. We cannot resolve this issue without first deciding if the hearing examiner had jurisdiction to determine whether or not But-

---

1. Buttitta alleged that "Guinea WOP" was a racial ethnic term used in a derogatory manner directed at Italian Americans. He recommended that all the allegations be sustained.

tita was the complainant in Tippy's suspension.

■ Awards of hearing examiners under Chapter 143 of the Texas Local Government Code do not constitute arbitration proceedings. *See City of League City v. Blevins*, 821 S.W.2d 212, 214 (Tex.App.—Houston [14th Dist.] 1991, no writ). Because of lack of caselaw, however, we will look to precedent involving arbitration awards for guidance when considering appealed examiners' awards as we have here. Appellate courts have established certain presumptions and guidelines in nonstatutory appeals involving arbitration in general. An arbitration award has the same effect as the judgment of a court of last resort, and a trial court reviewing the award may not substitute its judgment for the arbiters' merely because it would have reached a different conclusion. *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 518 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Arbitration awards are favored by the courts to dispose of pending disputes; therefore, every reasonable presumption will be indulged to uphold the arbitration proceeding. *Id.*; *Riha v. Smulcer*, 843 S.W.2d 289, 292 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Normally, the authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by implication. *City of Baytown*, 886 S.W.2d at 518. This appeal, however, is statutorily limited to the question of whether the examiner was without jurisdiction or abused his authority. TEX. LOC. GOV'T CODE ANN. § 143.1016(j) (Vernon Supp. 1990). The hearing examiner's decision is final and binding on all parties. TEX. LOC. GOV'T CODE ANN. § 143.1016(c) (Vernon Supp. 1990). The determination of whether "[a person assigned] to conduct an investigation ... is the complainant, the ultimate decision maker regarding disciplinary action, or a person who has any personal involvement regarding the alleged conduct" is of necessity an issue of fact. In order to comply with the statutory prohibitions and sanction provided in §§ 143.123(e) and (k), some authority must make this determination. Certainly the Legislature did not create a remedy without providing a means of effecting that remedy.

In an appeal in which the employee has raised this issue, the Civil Service Commission or, as in this case, the examiner, must be responsible and be implicitly authorized to make this determination. Consequently, we conclude that in the instant case the examiner was authorized to make a determination of fact that Buttitta was in fact the complainant or was personally affected by the misconduct, and participated in the investigation. Consequently, the findings and the award, which Tippy offered by affidavit as being true and correct, was proper summary judgment evidence.

■ Regarding the issues of lack of jurisdiction and abuse of authority, the evidence showed that the hearing examiner made the determination that Buttitta was both a complainant *and* involved in the investigation. It also recited the underlying evidence upon which the examiner came to that conclusion. The ultimate issue before the trial court was whether, as a matter of law, the examiner was empowered to make the determination he made. The City, in its motions and responses, failed to controvert Tippy's position that the hearing examiner did, in fact, have the jurisdiction to determine if a violation of § 143.123(e) had occurred. And its argument that the hearing examiner did not have jurisdiction because the violation of § 143.123(e) was raised for the first time at the hearing is without merit, since the hearing is the first opportunity in which an employee *can* raise that issue. Issues one and two are overruled.

■ The City is correct in its third issue when it argues that the standard of appeal from a hearing examiner's award is an abuse of authority. That is the only interpretation which can be given to Chapter 143.1016(j) of the Texas Local Government Code, since the statute limits appeals to those situations when the hearing examiner was "without jurisdiction or exceeded its jurisdiction or [when] the order was processed by fraud, collusion, or by other unlawful means." TEX. LOC. GOV'T CODE ANN. § 143–1016(j) (Vernon Supp.1990). This type of appeal is clearly intended to differ from an appeal from a civil service board decision, which requires that

the decision be supported by substantial evidence. See *Firemen's and Policemen's Civil Service Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 955 (Tex.1984) for a more extensive discussion of application of the substantial evidence rule. The City's position on the standard of review does not, however, change the ruling of this court. We hold that the hearing examiner did not abuse his authority in finding that Buttitta was both a complainant and involved in the investigation, and that the trial court properly granted summary judgment for Tippy upholding the hearing examiner's award. We sustain the City's third issue on appeal.

■ Tippy requests that we assess sanctions because the City's appeal in this case lacked merit, was for delay and to avoid payment. We refuse to take this action since some of the arguments of the City raised issues which were of first impression.

The judgment of the trial court is *affirmed*.